Jeff D. Friedman (SBN 173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman
(*Pro Hac Vice* Application to be filed)
Mark S. Carlson
(*Pro Hac Vice* Application to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

*Attorneys for Plaintiff and Counterclaim Defendant* THOUGHT, INC.

James G. Gilliland, Jr. (SBN 107988)
jgilliland@kilpatricktownsend.com
Mehrnaz Boroumand Smith (SBN 197271)
mboroumand@kilpatricktownsend.com
Steven D. Moore (*pro hac vice*)
smoore@kilpatricktownsend.com
KILPATRICK TOWNSEND &
 STOCKTON LLP
Eighth Floor, Two Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

*Attorneys for Defendants and Counterclaim Plaintiffs*
ORACLE CORPORATION, ORACLE AMERICA, INC. and ORACLE INTERNATIONAL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOUGHT, INC., a California corporation,<br><br>         Plaintiff,<br><br> v.<br><br>ORACLE CORPORATION, a Delaware corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation<br><br>         Defendants. | No. 3:12-05601 JSW<br><br>**[PROPOSED] STIPULATION AND ORDER REGARDING E-DISCOVERY** |

005006-11 599259 V1

**STIPULATION REGARDING E-DISCOVERY**

The above-captioned Parties stipulate as follows:

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the Court's discretion or by agreement of the parties. If the parties cannot resolve their disagreements regarding any modifications, the parties shall submit their competing proposals and a summary of their dispute to the Court.

3. A party's nonresponsive or dilatory discovery tactics will be considered in cost shifting determinations, if any. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations, if any. Both parties reserve the right to seek cost shifting under appropriate circumstances.

4. Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata except as indicated in Paragraph 5.I.

5. Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

    A. **Definitions and Scope**. The following protocol and definitions shall control the production of discoverable documents and electronically stored information when production commences. The following terms shall be defined:

        (1) **"Document(s)"** means ESI existing in any medium from which information can be obtained or translated into reasonably usable form and shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing same.

        (2) **"Native File(s)"** or **"Native Format"** means the file defined by the creating application for the ESI, e.g., the file in which the ESI is normally created, viewed and/or modified.

        (3) **"Metadata"** means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such

1   Native File; and (ii) information generated automatically by the operation of a computer or other
2   information technology system when a Native File is created, modified, transmitted, deleted or
3   otherwise manipulated by a user of such system.
4                   (4)   **"Static Image(s)"** means a representation of ESI produced by
5   converting a Native File into a standard image format capable of being viewed and printed on
6   standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static
7   Image.
8                   (5)   **"Load/Unitization file"** means an electronic file containing
9   information identifying a set of paper-scanned images or processed ESI and indicating where
10  individual pages or files belong together as Documents, including attachments, and where each
11  document begins and ends. A Load/Unitization file will also contain data relevant to the individual
12  Documents, including extracted and user created Metadata, coded data, as well as OCR or
13  Extracted Text.
14                  (6)   **"OCR"** means the optical character recognition file that is created by
15  software used in conjunction with a scanner that is capable of reading text-based documents and
16  making such documents searchable using appropriate software.
17                  (7)   **"Extracted Text"** means the text extracted from a Native File and
18  includes all header, footer and document body information.
19                  (8)   **"Receiving Party"** shall mean the party receiving production of
20  Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P.
21  34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.
22                  (9)   **"Producing Party"** shall mean the party producing Documents in
23  response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant
24  to initial production of documents identified in the party's Rule 26(a) disclosures.
25          B.      **General Format of Production**. Subject to the provisions of paragraph
26  5.C., Documents that are produced in these proceedings, whether originally stored in paper or
27  electronic form, shall be produced in electronic image form in the manner as described below.
28  Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request

1    that an alternative format or method of production be used for Documents that are not susceptible

2    to production in the format or methods of production addressed herein. In that event, the Receiving

3    Party and the Producing Party will meet and confer to discuss alternative production requirements,

4    concerns, formats, or methods.

5          C.    **Production Format**. Documents shall be produced according to the

6    following formats:

7          (1)    **Electronic Production of Paper Documents**. Documents that are

8    maintained in paper format shall be scanned as black and white images at 300 x 300 d.p.i. or

9    greater resolution, in a Group 4 compression single-page Tagged Image File Format ("TIFF" or

10   ".tiff format") reflecting source attachment information and reflecting the full and complete

11   information contained in the original Document. Documents shall also be produced with the

12   associated OCR in accordance with Paragraph 5.C.(3). No Producing Party shall be required to

13   ensure that the OCR is an exact duplicate of the contents of the TIFF image; and the Receiving

14   Party shall accept the OCR in its "as is" condition.

15         (2)    **Electronically Stored Information**. Except as provided in

16   Paragraph 5.C.(5) below, Document images shall be generated from electronic Documents in a

17   Group 4 compression single-page black and white "TIFF" image that reflects the full and complete

18   information contained on the original document, together with a load file or functional equivalent

19   specified in Paragraph 5.C.(3) that contains (or is produced with a corresponding text file that

20   contains) the metadata as set forth in Paragraph 5.I. and extracted text. In the event a Document is

21   redacted, the Producing Party shall withhold the redacted text for that Document. The failure to

22   withhold such text for a redacted document by a Producing Party shall not be deemed a waiver of

23   the privilege associated with that Document.

24         (3)    **Load/Unitization File Structure**. The Producing Party shall produce

25   a unitization file ("load file") for all produced Documents in accordance with the following

26   formatting, including for native Documents (in the same or a separate load file):

27         <u>**OCR and Extracted Text Files (.TXT Files):**</u>

28         •    Single text file per document containing all the document's pages

1   • Pages separated by form feed character (decimal 12, hex 0xC)
2   • Filenames should be of the form:
3   &lt;Bates num&gt;.txt
4   Where &lt;Bates num&gt; is the BATES number of the first page in the
5   document.
6   • Text must be encoded in UTF-8 or ANSI

**Images Files:**

• Single page per image and single image per file;
• TIFF is the default FORMAT unless the following formats are agreed to: jpeg, jpeg2000, giff, png, single image tiff, and bmp
• Filenames should be of the form:
&lt;Bates num&gt;.&lt;ext&gt;
Where &lt;Bates num&gt; is the BATES number of the page, and &lt;ext&gt; is the appropriate extension for the image format (.jpg, .tif, .png, etc)

**Index Files:**

• Comma Separated Value (.CSV) files or Concordance .DAT files
• First line must contain the column/field names (set forth in paragraph 5.I. herein)
• Every row must have the same number of columns/fields (empty values are acceptable)
• Text must be encoded in UTF-8 or ANSI.
• Values must be enclosed by decimal 17, hex 0x11 (ascii device control 1) or an equivalent
• Values must be separated by decimal 19, hex 0x13 (ascii device control 3) or standard .DAT delimiters; to avoid errors, the parties agree to use, where available, default Concordance delimiters:  ¶ and þ

**Native Index Files (if separate):**

- .CSV files or Concordance .DAT files
- All lines contain data – first row must NOT contain column headers.
- Every row must have 2 columns/fields (empty values are NOT acceptable)
- First column/field must contain the BATES number for the document
- Second column/field must contain the filename (NOT the full path) of the native file. Filenames must be unique in the production – unless the content is identical (for example, a native and an OCR text file may both be named XYZ01234567.TXT if they are identical).
- Text must be encoded in UTF-8 or ANSI.
- Values must be enclosed by double quotes (ascii character 34)
- Values must be separated by a comma (ascii character 44)

(4) **Resolution of Production Issues**. Documents that cannot be read because of imaging or formatting problems shall be identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

(5) **Native Format Documents**. Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain Documents to be produced in Native Format. Therefore, the Producing Party shall produce all spreadsheets (e.g., .XLS or .XLSX files) and .PPT presentations in native format unless there is an agreement to the contrary. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed. Such Documents shall be listed by the Receiving Party or a general agreement may be reached after meeting and conferring. Prior to producing any Protected Information as defined in any applicable Protective Order entered herein in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the native information.

1    (6) **Color**. Documents may be produced in black and white in the first
2 instance. If a produced Document contains color and that color is necessary to decipher the
3 meaning, context, or content of the document, the Producing Party shall honor reasonable requests
4 for either the production of the original Document for inspection and copying or production of a
5 color image of the Document.

6    D.   **Production Media**. A Producing Party shall produce Documents on a
7 CD-ROM, DVD, external hard drive, ftp, or such other readily accessible computer or electronic
8 media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production
9 Media"). Information that shall be identified on the face of the Production Media shall include: (1)
10 the production date, and (2) the confidentiality notation required by the Protective Order entered in
11 this case, if the media contains Confidential Information, as defined in the Protective Order. Where
12 practicable, the face of the Production Media shall also contain the Bates Number range(s) of the
13 Documents on the Production Media. Where not practicable, the range(s) may be provided in an
14 accompanying letter. If the Producing Party encrypts or "locks" the production, the Producing
15 Party shall include with the production an explanation of how to decrypt the files.

16    E.   **Document Unitization**. When scanning paper documents into Document
17 Images as described in paragraph 5.C.(1), they shall be unitized in a manner so as to maintain the
18 document(s) and any attachments as they existed in their original state. For electronic documents,
19 the relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail
20 and attachments, binder containing multiple documents, or other documents where a parent-child
21 relationship exists between the documents) shall be maintained through the scanning or conversion
22 process from native format to TIFF, provided however, that the Parties shall be required to present
23 only one level of parent child relationship. Document Images generated from attachments to
24 e-mails stored in Native Format shall be produced contemporaneously and sequentially
25 immediately after the parent e-mail. All hard copy documents imaged and produced electronically
26 shall include a unitization file ("load file") in accordance with paragraph 5.C.(3).

27    F.   **Paper Documents Containing Fixed Notes**. Paper Documents that contain
28 fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to

1    obstruct other content on the document. If the content of the Document is obscured by the affixed
2    notes, the Document and note shall be scanned separately.
3               G.      **Duplicates**. If a Producing Party who has more than one identical copy of an
4    electronic document (i.e., the documents are actual duplicates), the Producing Party need produce
5    only a single copy of that document. A Producing Party need not produce the same electronically
6    stored information in more than one form.
7               H.      **Bates Numbering**. Each Producing Party shall Bates number its
8    production(s) as follows:
9                       (1)     **Document Images**. Each page of a produced Document shall have a
10   legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a
11   location that does not unreasonably obliterate, conceal, or interfere with any information from the
12   source document. The Bates Number shall contain a two to four letter prefix associated with the
13   Producing Party's name followed by 8 numbers (e.g., ABCD00000001). The Producing Party will
14   use a consistent prefix throughout the matter. Thus, once a party chooses a four letter prefix, e.g.
15   ABCD, it shall not later produce a Document using a different prefix, e.g. EFGH. No other legend
16   or stamp will be placed on the Document Image other than a confidentiality legend (where
17   applicable), redactions, the Bates Number identified above, and any other internal tracking number
18   that the Producing Party may choose to use. The confidentiality legend shall be "burned" onto each
19   document's image at a location that does not unreasonably obliterate or obscure any information
20   from the source document.
21                      (2)     **Native Format Documents**. In the event Native Format Documents
22   are produced, in order to preserve the integrity of those Native Format Documents, no Bates
23   Number, confidentiality legend, or internal tracking number should be added to the internal content
24   of the Native Document, but may be added to the file name and/or to a document placehold
25   provided with the production.  Additionally, Native Format Documents may be produced with
26   password protection.
27              I.      **Metadata**. To the extent it is reasonably accessible, the Producing Party
28   shall produce the metadata information described below with each production and in the format

1  described in this Paragraph 5, above. For images generated from native electronic documents, a
2  Producing Party shall produce with each production the following fields, where available. The field
3  naming conventions shall be the following, unless otherwise agreed. Substantially similar field
4  names may be used if consistent with the defined fields. Field names must be consistently applied
5  for each production by a Producing Party. Upon request from the Receiving Party, the Producing
6  Party shall produce additional metadata for select documents.  In the event the parties cannot reach
7  agreement regarding a request to produce metadata, it shall be the Receiving Party's burden to
8  show good case for such production.

| FIELD | DEFINITION | DOC TYPE |
|---|---|---|
| SOURCE | Name of party producing the document/data | ALL |
| CUSTODIANS | Name of person from whose files the document/data is being produced | ALL |
| BEGINBATES | Beginning Bates Number (production number) | ALL |
| ENDBATES | Ending Bates Number (production number) | ALL |
| FROM | Sender | EMAIL[1] |
| TO | Recipient | EMAIL |
| CC | Additional Recipients | EMAIL |
| BCC | Blind Additional Recipients | EMAIL |
| SUBJECT | Subject line of Email | EMAIL |
| BEGATTACH | First Bates number of a family range (i.e. Bates number of the first page of the parent email) | EMAIL |
| ENDATTACH | Last Bates number of a family range (i.e. Bates number of the last page of the last attachment) | EMAIL |
| DATESENT | Date sent | EMAIL |
| TIMESENT | Time sent | EMAIL |
| HASHVALUE | MD5 Hash for Edocs | EDOCS |
| DOCTYPE | Document type (e.g. .doc, .pst, .ppt, .xls, .pdf) | EDOCS |
| NATIVELINK | The path to the native files in the production | EDOCS |
| AUTHOR | The creator of a documents | EDOCS |
| TITLE | The title of a document | EDOCS |

25          J.      **Privilege Logs**. The Producing Parties will produce privilege logs in an
26  electronic format that allows text searching and organization of data. When there is a chain of

---

[1] For purposes of providing metadata, "EMAIL" Documents excludes attachments.

ORDER REGARDING E-DISCOVERY
Case No.: 3:12-05601 JSW                                                                                      - 8 -

1  privileged emails, the Producing Party need only include one entry on the privilege log for the
2  entire e-mail chain, and need not log each e-mail contained in the chain separately. The parties
3  shall meet and confer regarding the appropriate timing for the production of privilege logs.
4  However, the production of a privilege log for a custodian shall be not less than 7 days prior to that
5  custodian's deposition. The Producing Party and the Receiving Party may modify the deadlines for
6  production of privilege logs by agreement. Parties are not required to include in the privilege logs
7  any information or Documents generated or created after the filing of the complaint in this matter.

8        K.      **No Backup Restoration Required**. Absent a showing of good cause, no
9  party need restore any form of media upon which backup data is maintained in a party's normal or
10 allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of
11 media, to comply with its discovery obligations in the present case.

12       L.      **Categories that Need Not Be Preserved**. Absent a showing of good cause
13 by the Requesting Party, the categories of ESI identified in Schedule A need not be preserved.

14       M.      General ESI production requests under Federal Rules of Civil Procedure 34
15 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or
16 other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail, parties must
17 propound specific e-mail production requests.

18       N.      E-mail production requests shall be phased to occur timely after the parties
19 have exchanged initial disclosures, a specific listing of all e-mail custodians likely to have
20 discoverable information, a specific identification of the ten most significant listed e-mail
21 custodians in view of the pleaded claims and defenses,[2] infringement contentions and
22 accompanying documents pursuant to Patent L.R. 3-1 and 3-2, invalidity contentions and
23 accompanying documents pursuant to Patent L.R. 3-3 and 3-4, and preliminary information
24 relevant to damages. The exchange of this information shall occur at the time required under the
25 Federal Rules of Civil Procedure, Local Rules, or by order of the Court. The parties may jointly
26 agree to modify this limit or, failing agreement, by seeking leave of Court.

27
28    [2] A "specific identification" requires a short description of why the custodian is believed to be significant.

ORDER REGARDING E-DISCOVERY
Case No.: 3:12-05601 JSW     - 9 -

1       O.     E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its e-mail production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer custodians per producing party upon showing a distinct need based on the size, complexity, and issues of this specific case.

      P.     Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

      Q.     Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI document is not a waiver in the pending case or in any other federal or state proceeding. *See also* Section 13 of the Stipulated Protective Order in this matter, specifying that "When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B)".

12.     The mere production of ESI in a litigation as part of a mass production shall not

ORDER REGARDING E-DISCOVERY
Case No.: 3:12-05601 JSW     - 10 -

1  itself constitute a waiver for any purpose.

2      13.    Except as expressly stated, nothing in this order affects the parties' discovery

3  obligations under the Federal or Local Rules.

ORDER REGARDING E-DISCOVERY
Case No.: 3:12-05601 JSW      - 11 -

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
3. On-line access data such as temporary internet files, history, cache, cookies, and the like.
4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.
5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.
6. Voice messages.
7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.
8. Device-to-device (pin-to-pin) messages sent to or from mobile devices (e.g., Android, iPhone, and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.
9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.
10. Logs of calls made from mobile devices.
11. Server, system, or network logs.
12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as a part of a laboratory report.
13. Data remaining from systems no longer in use that is unintelligible on the systems in use.
14. Company wikis and social network data from services such as Facebook, LinkedIn and Twitter.

1 **IT IS SO STIPULATED.**

2 DATED: May 6, 2013    /s/ *Jeff D. Friedman*
Steve W. Berman
3 (*Pro Hac Vice* Application to be filed)
Mark S. Carlson
4 (*Pro Hac Vice* Application to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
5 1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
6 Telephone: (206) 623-7292
7 Facsimile: (206) 623-0594
steve@hbsslaw.com
8 markc@hbsslaw.com

9 Jeff D. Friedman (173886)
10 HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
11 Berkeley, CA 94710
Telephone: (510) 725-3000
12 Facsimile: (510) 725-3001
jefff@hbsslaw.com
13

14 *Attorneys for Plaintiff and Counterclaim Defendant* THOUGHT, INC.
15

16
17 DATED: May 6, 2013    /s/ *Robert J. Artuz*    P
James G. Gilliland, Jr. (SBN 107988)
18 jgililand@kilpatricktownsend.com
Mehrnaz Boroumand Smith (SBN 197271)
19 mboroumand@kilpatricktownsend.com
Steven D. Moore (*pro hac vice*)
20 smoore@kilpatricktownsend.com
KILPATRICK TOWNSEND &
21  STOCKTON LLP
Eighth Floor, Two Embarcadero Center
22 San Francisco, CA 94111
Telephone: (415) 576-0200
23 Facsimile: (415) 576-0300

24
25 *Attorneys for Defendants and Counterclaim Plaintiffs*
ORACLE CORPORATION, ORACLE
26 AMERICA, INC. and ORACLE
INTERNATIONAL CORPORATION
27

28

ORDER REGARDING E-DISCOVERY
Case No.: 3:12-05601 JSW                                                                                                  - 13 -

1  **ORDER**

2  **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

3

4  DATED:  May 7, 2013                       _____*Jeffrey S. White*_____
                                              HONORABLE JEFFREY S. WHITE
5                                             United States District Judge

6  65406240V.1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER REGARDING E-DISCOVERY
Case No.: 3:12-05601 JSW                                              - 14 -