UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOUGHT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ORACLE CORPORATION, et al.,<br><br>    Defendants. | Case No. 12-cv-05601-WHO<br><br>**ORDER GRANTING MOTIONS TO STRIKE INFRINGEMENT CONTENTIONS AND INVALIDITY CONTENTIONS**<br><br>Re: Dkt. Nos. 161,163 |

Under an informal, disputed agreement, plaintiff Thought, Inc. ("Thought") and defendants Oracle Corporation et al. ("Oracle") submitted "supplemental" infringement and invalidity contentions that each side argued were necessitated by my claim construction Order on October 22, 2014. After the submissions, neither party agreed that the other's amended contentions were appropriate, and each seeks to have the other's struck. After considering the parties' memoranda, accompanying papers and the argument of counsel on September 30, 2015, I GRANT both parties' motions to strike because neither party acted with diligence in moving to amend their contentions. Further, Thought failed to provide any evidence as required by Patent Local Rules 3-1 and 3-2 of an invention date prior to the filing date of the patent at issue. Its belated disclosure of evidence in support of an earlier date is untimely, prejudicial, and does not comply with the local rules.

## BACKGROUND

Thought commenced this action on October 31, 2012. Dkt. No. 1. It initially alleged infringement of seven patents, including U.S. Patent No. 5,857,197 ("the '197 patent"). *Id.* After the claim construction Order, the parties stipulated to dismiss Thought's claims of infringement of all patents except the '197 patent on August 3, 2015. Dkt. No. 150.

Because the parties' diligence is a central focus of this Order, a recitation of the dates

1  certain activities occurred in this litigation is appropriate. Oracle served discovery requests on
2  Thought on February 8, 2013. Artuz Decl. ¶¶ 2-3 (Dkt. No. 163-1). On March 11, 2013, Thought
3  responded, asserting an unverified invention date of May, 1996. Thought's Resp. to
4  Interrogatories at 3 (Artuz Decl., Ex. 1.); Thought's Resp. to RFPs (Artuz Decl., Ex. 2).

5  Thought served its infringement contentions and accompanying document production
6  pursuant to Patent Local Rules 3-1 and 3-2 on April 12, 2013. Initial Infringement Cont. (Artuz
7  Decl., Ex. 3); Infringement Chart (Artuz Decl., Ex. 4). Oracle served its initial invalidity
8  contentions on August 2, 2013. Carlson Decl. ¶ 7 (Dkt. No. 168-1); Artuz Decl. ¶ 9. It filed two
9  supplemental invalidity contentions on September 26, 2013, and January 31, 2014. Carlson Decl.
10 ¶ 7.

11  I issued a claim construction Order on October 22, 2014, which largely adopted Thought's
12  proposed constructions. Dkt. No. 116. On January 7, 2015, Oracle wrote to Thought, stating that
13  "each party needs to amend its respective contentions to account for the ordered constructions."
14  Artuz Decl., Ex. 17. It identified a number of points that Thought should clarify in response to the
15  claim construction Order. *Id.* On January 26, 2015, Thought responded, agreeing that the parties
16  should set dates for supplementation but suggesting that they not do so before a pending ruling
17  was issued after *inter partes* review. *Id.*

18  On February 6, 2015, Oracle wrote, "In addition to amending your infringement
19  contentions to account for the claim construction order, we also request that you update your
20  contentions to address deficiencies in your identification of accused functionality." Carlson Decl.,
21  Ex. 6 (Dkt. No. 168-7). It identified two "deficiencies": that the current contentions fail to take
22  into account source code and related documentation, and that the current contentions "are facially
23  inconsistent or, at least to us, incomprehensible." *Id.*

24  The parties did not file any stipulation with the Court regarding their agreements regarding
25  supplementation.[1] On April 20, 2015, Thought submitted supplemental infringement contentions.
26  Artuz Decl. ¶ 10; Supp. Infringement Cont. (Artuz Decl., Ex. 5). On May 18, 2015, Oracle

---

[1] They did stipulate to extend the discovery deadlines in this case, and I granted it on July 6, 2015. Dkt. No. 145.

1  submitted its third supplemental invalidity contentions. Carlson Supp. Decl., Ex. 5 (Dkt. No. 161-
2  6). On July 13, 2015, Thought submitted a supplemental response to Oracle's discovery requests,
3  alleging an invention date of May 1995. Supp. Resp. 5 (Carlson Decl., Ex. 4 (Dkt. No. 168-5)).
4  This time, it corroborated the date with substantial documentation. *Id.*

5  On August 3, 2015, the parties stipulated to dismiss all patent infringement claims except
6  for those based on the '197 patent. Dkt. No. 150. Fact discovery closes on October 7, 2015. Dkt.
7  No. 167. The expert discovery cutoff is set for December 11, 2015. *Id.*

## LEGAL STANDARD

Pursuant to the Patent Local Rules for the Northern District of California, a party claiming infringement must submit infringement contentions within fourteen days of the parties' initial Case Management Conference. Patent L.R. 3-1. These must include, among other things, "each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware," and must "be as specific as possible." Patent L.R. 3-1(b). In addition, the contentions should include an indication of "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Patent L.R. 3-1(e). Rule 3-1(f) requires parties to provide, "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled."

Finally, "[i]f a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim." Patent L.R. 3-1(g). The "parties should proffer all of the theories of infringement that they in good faith believe they can assert." *Apple Inc. v. Samsung Electronics Co.*, No. 12-cv-0630-LHK PSG, 2013 WL 3246094, at *3 (N.D. Cal. June 26, 2013).

Patent Local Rule 3-2 governs "Document Production Accompanying Disclosure," which must accompany the Rule 3-1 disclosures. This must contain documents that relate to the sale or

3

other use of the claimed invention, as well as "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(f), whichever is earlier." Patent L.R. 3-2(a)-(b). A defendant must serve invalidity contentions and document production no later than 45 days after it is served with the infringement contentions. Patent L.R. 3-3, 3-4.

The court may allow a party to amend its infringement contentions only "upon a timely showing of good cause." Patent L.R. 3-6. The Patent Local Rules supply several circumstances that support a finding of good cause, provided there is no prejudice to the non-moving party. *Id.* These include "[a] claim construction by the Court different from that proposed by the party seeking amendment," and "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." *Id.*

The patent local rules were designed to require parties to crystallize their theories of infringement early in litigation, and to adhere to such theories. *Samsung*, 2013 WL 3246094, at *1. In determining whether a party has good cause to amend, courts will first look to see whether the moving party has good cause, which requires that it act with diligence, and then to whether the non-moving party will suffer prejudice. *Id.* The focus of this inquiry is on the moving party's reasons for seeking amendment. *Id.*

"[T]he philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Atmel Corp. v. Info. Storage Devices Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006). The Federal Circuit has recognized that the local rules simultaneously require parties to provide early notice of invalidity and infringement contentions, while proceeding with diligence in amending those contentions. *O2 Micro*, 467 F.3d at 1365-66. They "thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Id.* at 1366.

4

**DISCUSSION**

**I.  WHETHER THOUGHT MAY ASSERT AN EARLIER INVENTION DATE**

At issue is whether Thought may assert the invention date of May, 1996, which it provided to Oracle on March 11, 2013 in its answer to Oracle's interrogatories, and whether Thought may rely on its recently-disclosed evidence to support this position.

**A.  Document Production Background**

In response to Oracle's interrogatories, Thought stated that the conception date for the '197 patent was "[o]n or about May, 1996." Thought's Resp. to Interrogatories at 3. It further described, "[s]hortly thereafter, by July, 1996, Thought developed a functional implementation of CocoBase which practiced the claims of the '197 patent." *Id.* The response also asserted that "Thought will produce documents responsive to this interrogatory with its disclosures of asserted claims and infringement contentions and accompanying documents on April 12, 2013 as required by the Court's Scheduling Order and Local Patent Rule 3-2(b)." *Id.* at 4. In addition, "Thought reserve[d] the right to supplement this interrogatory answer . . . as its investigation and discovery continues." *Id.*

Oracle also requested production of documents related to "the conception or reduction to practice of the alleged inventions claimed by the patents-in-suit." Thought's Resp. to RFPs at 4. Thought confirmed that it would produce responsive documents by April 12, 2013. *Id.* at 5.

Thought's Rule 3-1 disclosures were served on April 12, 2013. Initial Infringement Cont. at 6. Under the section "Disclosure of Asserted Claims and Infringement Contentions," Thought asserted that all patents other than the ones it specifically discussed "claim priority as of their filing dates at the latest." *Id.* at 1. It then stated that it "preserves the right to rely on the assertion that its CocoBase Enterprise products are embodiments of the claimed inventions" citing March 20, 1997 as the first sale, public use, or public disclosure of CocoBase, for the '197 patent. *Id.*

Thought's Rule 3-2(b) disclosures did not include any documents to support a May, 1996 invention. Oracle Mot. at 3 (Dkt. No. 163). Oracle states that it later requested confirmation of whether the Rule 3-2 production included "any documents responsive to Oracle's previous interrogatories and requests for production related to the invention date of the '197 patent," but

5

Thought did not respond. *Id.*

Thought produced four documents in 2013. Carlson Decl. ¶ 12. These consisted of four emails from December of 1996, and January and February of 1997, that discussed CocoBase. Carlson Decl., Exs. 8-11. Thought asserts that they were produced in April, 2013, but Oracle states in its reply that they were actually produced in September of 2013, after it served its initial invalidity contentions. Oracle Reply 2 (Dkt. No. 172).

**B. The Parties' Arguments**

Oracle asserts that it served its invalidity contentions in reliance on Thought's failure to provide any evidence in support of the earlier invention date, and that it has included prior art that predated the filing date but postdated May, 1996. *Id.* Oracle requests that I strike Thought's recent productions, and preclude Thought from asserting an invention date prior to the filing date of the '197 patent. Oracle Mot. 6, 11.

Oracle points out that the May, 1996 date was not supported by documentation in accordance with Patent Local Rule 3-2. Mot. 8. Even though it requested that Thought supply such information before Oracle's invalidity contentions were due, Thought did not do so. *Id.* In addition, Thought did not seek to amend its Rule 3-2 disclosures, which Oracle contends was required by Rule 3-6. *Id.* at 13.

Oracle stresses that "the invention date of a patent is presumed to be its filing date," *id.* at 6 (citing *Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000)), and that Thought's only evidence of a prior invention date was the testimony of the inventor, which must be corroborated. *Id.* at 9. It contends that Thought had evidence of the earlier invention in 2013, and used it to prepare its interrogatory responses. *Id.* at 9. It points to the deposition of the patent's inventor, Ward Mullins, that indicates that Mullins assisted in responding to the interrogatories and knew of information that was not disclosed to Oracle in 2013. *Id.* at 9-10; Mullins Depo. 19:22-22:12 (Atruz Decl., Ex. 16).

According to Thought, however, it did not produce the documents in support of a May, 1995 invention date until July 13, 2015 because it did not discover them until then. Thought Opp. 2-3 (Dkt. No. 168). It states that they were found on floppy disks "that were discovered in

6

mislabeled boxes and covered by unrelated documents in Thought's archived materials in June 2015." *Id.* It contends that it had been searching for these documents but had been unable to find them. *Id.* at 3.

Thought argues that Oracle did not rely on the Rule 3-1 disclosures to establish the invention date, and that any such reliance would be unreasonable. Opp. 8, 10. It states that parties need not corroborate inventor testimony in Rule 3-2 disclosures, and that the emails it disclosed in April of 2013 supported its 1996 invention date. *Id.* at 9. It also takes the position that Rule 3-1(f) does not require plaintiffs to assert conception dates. *Id.* at 10.

**C. Discussion**

I first address whether Thought may assert the May, 1996 invention date or whether it is limited to the filing date included in the Rule 3-1 disclosures. This requires a determination of whether the Patent Local Rules require parties to disclose the invention date of a patent that does not claim priority to an earlier application.

Local Rule 3-1(f) refers to "any patent that claims priority to an earlier application." Thought asserts that this clause does not apply to the '197 patent, because it does not claim that it is entitled to priority to an earlier application. Thought Opp. 12. Therefore, it contends that its response that "all other patents" claim their filing date as their priority date does not operate as an admission that date of invention of the '197 patent was the filing date. Other courts in this district have declined to address this argument, although they have noted that courts in other districts with similar rules have found that "the priority date' contemplated by Patent Local Rule 3–1(f) refers solely to priority to an earlier application, and not necessarily to the date of conception and reduction to practice." *Altera Corp. v. PACT XPP Technologies, AG*, No. 14-cv-02868-JD, 2015 WL 928122, at *3 (N.D. Cal. Feb. 19, 2015).

On the other hand, Local Rule 3-2(b) requires the party alleging infringement to provide "*[a]ll documents* evidencing the conception . . . of each claimed invention, *which were created on or before the date of application for the patent in suit* or the priority date identified pursuant to Patent L.R. 3-2(f), whichever is earlier." Patent L.R. 3-2(b) (emphases added). This indicates that the plaintiff must provide all documents related to its claimed invention date, regardless of

7

1 whether that patent claims priority to an earlier application. At least one court in this district has
2 indicated that this means, "[f]or any earlier priority date identified pursuant to that rule, the
3 patentee must produce documents evidencing the conception . . . of each claimed invention." *Blue*
4 *Spike, LLC v. Adobe Sys., Inc.*, No. 14-CV-01647-YGR(JSC), 2015 WL 335842, at *7 (N.D. Cal.
5 Jan. 26, 2015) (internal quotations omitted).

6 On this issue, I follow the reasoning of the Hon. William Alsup in *Harvatek Corp. v. Cree,*
7 *Inc.,* No. 14-CV-05353 WHA, 2015 WL 4396379 (N.D. Cal. July 17, 2015). In that case, the party
8 alleging infringement did not provide any conception date in its Rule 3-1 disclosures and provided
9 only general prosecution documents with its Rule 3-2 documents, even after a reminder from the
10 defendant.  The party asserted the filing date as the invention date in responses to interrogatories.
11 But after invalidity contentions that relied on the filing date were served and two months after the
12 Rule 3-1 and 3-2 deadlines had passed, the plaintiff sought to produce additional documents that
13 evidenced an invention date earlier than the filing date.

14 The court stated that "Patent L.R. 3–l(f) particularly requires a patent holder to assert a
15 specific date of conception, not a date range, and Patent L.R. 3–2(b) requires the proactive and
16 expedient production of evidence of that conception date." *Id.* at *2. Judge Alsup reasoned:

> [Defendant] has . . . been unable to focus its discovery efforts on a specific conception date. Further, if [plaintiff] were to be allowed to assert a specific conception date later in litigation, considerable time and money could be needlessly expended in discovery that could be obviated or narrowed following [defendant's] early motion for summary judgment. [Plaintiff's] failure to identify a specific conception date has allowed it to reverse the order of the procedure contemplated by our Patent Local Rules, giving it a preview of Cree's invalidity contentions before offering a concrete conception date.

*Id.*

23 The purpose of the local rules to crystallize the parties' theories early in litigation would be
24 frustrated if Patent Local Rule 3-1 and 3-2 were read to allow a plaintiff to avoid specifying a
25 conception date or provide any documents that support this date. *See id.* ("[defendant's] failure to
26 identify a specific conception date has allowed it to reverse the order of the procedure
27 contemplated by our Patent Local Rules, giving it a preview of [plaintiff's] invalidity contentions

before offering a concrete conception date."). Indeed, many of Oracle's theories of invalidity rely on prior art, which is heavily affected by the conception date. While Thought submits that *Harvatek* is incorrect, it does not provide a case to support its position. Thought Opp. 10.

Neither Thought's Rule 3-1 and 3-2 disclosures, nor its responses to Oracle's interrogatories, provided a response sufficient for Thought to rely on a May, 1996 invention date. *See* Patent L.R. 3-6 ("The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions."). At the hearing, after I announced my tentative ruling in Oracle's favor on this issue, Thought agreed to give Oracle the relief it sought and to assert the filing date of the patent as the invention date. Oracle's motion to strike Thought's recent productions of its invention date and amended invention date is GRANTED.

## II. WHETHER THOUGHT MAY ASSERT NEW THEORIES

Oracle requests that I strike new theories in Thought's Amended Infringement Contentions. It identifies several: (i) the doctrine of equivalents arguments; (ii) theories that are not related to its original contentions based on Java Persistence API ("JPA"); and (iii) specific claim limitations. Oracle Mot. 17-21. Thought makes two general arguments to justify the additions to its infringement contentions. First, it asserts that its amendments were necessitated by its review of Oracle's source code for the accused products. Thought Opp. 16-17. Second, it argues that "Oracle expressly authorized, indeed demanded" its infringement contention supplementations in email correspondence. Thought Opp. 18. It does not argue that the claim construction Order provides it with good cause to amend.

Thought's desire to add the DOE theory to its infringement contentions is not properly considered "supplementation" to the infringement contentions, but is instead an amendment. Patent Local Rule 3-1(e) requires plaintiffs to include whether they will rely on DOE arguments in their initial contentions, and courts regularly treat additions of a DOE argument in motions to amend contentions under Rule 3-6. Thought has not moved to amend its contentions, although it argues in its brief that its "amendment" is in accordance with Rule 3-6. Thought Opp. 16. I treat Thought's motion as a motion to amend under Rule 3-6 and deny it.

### A. Source Code Review

"Courts typically grant leave to amend infringement contentions after a patentee has been given the opportunity to inspect relevant source code." *Radware, Ltd v. A10 Networks, Inc.*, No. C13-02021, 2014 WL 1350230, at *2 (N.D. Cal. Apr. 4, 2014); *see also PersonalWeb Technologies, LLC Google Inc.*, No. C13-01317-EJD (HRL), 2014 WL 218164, at *2 (N.D. Cal. Jan. 17, 2014); *Unwired Planet, LLC v. Apple Inc*, No. 13-CV-04134-VC, 2014 WL 5396735, at *3 (N.D. Cal. Oct. 23, 2014). Therefore, absent prejudice to Oracle resulting from some act or omission of Thought, Thought would be entitled to amend if the source code allowed it to develop theories that it was otherwise not able to develop.

As a threshold question, however, I must address whether Thought's review of the source code was diligent. Oracle asserts that it was not. The date when Thought received or could access the source code is critical to this inquiry. Thought asserts that it did not receive the source code until "the summer of 2014." Thought Opp. 16. It asserts that it reasonably waited until October 2014, when the claim construction Order issued, to conduct "the bulk of its review" of the source code. *Id.* It finished in April of 2015.

In its reply, Oracle directly contradicted Thought's assertion that the source code was not available until 2014 and asserts that it made it available a year earlier, in 2013. Reply 10. It submits two emails dated June 28, 2013 and August 12, 2013. The first email from Oracle states the source codes for TopLink, JDeveloper, and Oracle's implantation of JDBS were available for review at the San Francisco office of Oracle's counsel. Dkt. No. 172-2. It also provided publicly available source code for Eclipse Link and NetBeans. *Id.* Oracle expressed a willingness to meet and confer immediately to discuss production of JMS implementation source code. *Id.*

The second email from Thought states that it "tabled [source code review] for now pending our review of Oracle's prior art." Dkt. No. 172-3. It also contains an earlier email that Oracle accommodated Thought's request to make the source code available at counsel's Menlo Park office. *Id.*

At the hearing, Thought asserted that while there was supposed to be a review of the source code in the summer of 2013, Oracle failed to produce it for the accused products. Oracle

10

disagrees.  Regardless, Oracle also asserts that it notified Thought that it was prepared to allow Thought to inspect the source code at any time after Thought's first inspection after the source code, which Thought did not dispute.  Instead, its real argument is that it was prudent and appropriate to wait until the claim construction issued in order to save money and improve efficiency.

Thought's decision to wait over a year to begin a substantive review of source code does not demonstrate diligence.  Although I understand Thought's rationale for waiting to review the source code, I am unwilling to accept that parties may wait until after a claim construction order is issued to review source code and solidify their theories of infringement.  The delay that practice insures conflicts with the aim of the patent local rules to require parties to crystallize their theories early on in the case.  Even after the claim construction Order, Thought spent an additional six months reviewing the source code.  It does not explain why that length of review was necessary or expedient other than its broad assertion that the review encompassed multiple versions of TopLink and "millions of lines of complex Java code."  Thought Opp. 16.

But even if Thought had been diligent, I am unpersuaded that the source code review was the only way for Thought to assert the amended theories.  Thought's rationale was not compelling.  Not only did it fail to adequately explain why the claim construction Order would have a significant impact on the source code review, the connection it drew between the source code review and the new theories and other additions to its infringement contentions was conclusory and it did not explain why it was unable to assert them earlier in the litigation.

For example, Thought's Supplemental Infringement Contentions include new doctrine of equivalents arguments for the terms "first adapter," "second adapter," and "having a meta data map."  Artuz Decl., Ex. 5.  Thought states that these theories did not become apparent to it until after it reviewed the source code for the accused products.  Thought Opp. 19.  It also asserts that the source code clarified its DOE arguments because it did not know the "way" the accused products "function."  *Id.*  But it does not provide *which* source code, public or nonpublic, gave rise to this development.  It also does not provide any other information about what it learned from the source code and how it relates to the new DOE argument.  Without further information, I do not

11

conclude that the DOE additions are justified by access to source code.

Thought's addition of "TopLink sessions," "container-managed persistence," and "bean-managed persistence" are all implementations of TopLink, which Thought did not review until the source code review. But Oracle points out that public documents described TopLink's ability to provide "container-managed persistence" and "bean-managed persistence." Oracle Mot. 18. It seems that the mere ability of TopLink to provide these three functionalities is not something that can only be discovered by reviewing source code, and that Thought could have asserted the functionalities earlier. Thought does not provide a compelling reason why source code review was necessary to develop these theories, aside from a general citation that source code reveals how TopLink actually functions. In the absence of any evidence to the contrary, I do not conclude that the added implementations are justified by access to source code.

Lastly, Oracle objects to Thought's addition of theories related to claim elements of the '197 patent. Oracle Mot. 19. It describes six new arguments that are not based on the "JPA" functionality in its products. *Id.* at 19-22. Some of these relate to claims that were construed in the claim construction Order. For example, Thought now seeks to contend that the "generation of a 'change set'" by a "unit of work" constitutes "packing." *Id.* at 20.

Oracle provides details of how Thought's new theories differ from its prior ones. *Id.* Thought's response largely relies on its position that Oracle requested the changes that it made. *See* Thought Opp. 21-24. As discussed below, this argument is weak. Thought states in a conclusory manner that its amendments are based on its review of the source code, but does not provide any specific information on why the source code allowed these arguments to come to light for the first time. Thought's lack of diligence and inability to explain the materiality of its belated source code review to the many changes to its contentions and theories do not provide it with good cause to amend its infringement contentions.

### B. Communications Between the Parties

The parties argue at length over the meaning of their emails to one another that contemplated amendment of the infringement and invalidity contentions. I do not place great weight on their communications and informal agreements. Although parties may stipulate to

12

changing deadlines, or submitting respective supplemental contentions under the Patent Local Rules, they are not automatically entitled to do so: agreements affecting case management deadlines must be approved by the Court.  These parties did not come to a formal (or, given their disputes, perhaps any) agreement, and I am not going to interpret whether Oracle did or did not "authorize" Thought to add the contested theories or whether the emails otherwise justify Thought's additions.  Although the emails may be probative of prejudice, I do not ascribe weight to the parties' communications in resolving whether Thought may amend.

### III. WHETHER ORACLE MAY AMEND ITS INVALIDITY CONTENTIONS

Oracle seeks to amend its invalidity contentions to argue that Thought's '197 patent is invalid under 35 U.S.C. § 101.  Oracle asserts that the claim construction Order justifies amendment.  It argues that "[b]ecause the Claim Construction Oder did not limit the claims of the '197 patent to a network-centric environment, the likelihood that the asserted claims would be found patent-ineligible under 35 U.S.C. § 101 substantially increased."  Oracle Opp. 2-3 (Dkt. No. 169).  It also contends that the court's broad construction of "placing data" makes it likely that the patent is invalid.  *Id.* at 3.

Thought counters that "[c]onstructions of two isolated elements do not determine the '197 Patent's eligibility under Section 101."  Thought Reply 4 (Dkt. No. 170).  I disagree with that argument because I construed various terms in a way that was both adverse to Oracle and broadened their purview.  Oracle would have been justified in altering its position on the patent's ineligibility based on these interpretations.

However, Oracle was not diligent in moving to amend.  A party's diligence in moving to amend infringement or invalidity contentions in response to a claim construction order is triggered when the parties serve their initial proposed constructions.  *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2014 WL 1899616, at *4 (N.D. Cal. May 12, 2014); *see also Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009) ("The risk of the construction rendered by the presiding judge was well known and anticipated by Defendant.  Prior art and claims charts anticipating that construction had already been provided . . . The ruling in and of itself does not constitute good

cause."); *Cisco Sys., Inc. v. Teleconference Sys., LLC.*, No. 09-CV-01550 JSW (NC), 2012 WL 9337627, at *3 (N.D. Cal. June 11, 2012). Here, Oracle was served with Thought's claim construction brief on February 13, 2014. Dkt. No. 70. I ultimately accepted the proposed constructions in that brief. *Id.*; Dkt. No. 116. Any "good cause" to amend stemming from the claim construction Order was triggered no later than February 13, 2014. And, not to put too fine a point on it, Oracle did not contact Thought about amending until January of 2015, even though the adverse claim construction Order issued at the end of October, 2014. It should not have waited that long.

At the hearing, Oracle agreed that Thought's motion to strike and its motion concerning Thought's amendments should rise or fall together. Thought's motion to strike is GRANTED.

## CONCLUSION

For the above reasons, both parties' motions to strike are GRANTED. Thought's amended infringement contentions and Oracle's amended invalidity contentions are STRUCK, as are Thought's supplemental responses to Oracle's interrogatories.

Repeating the direction I gave at the hearing, the parties shall each submit a brief of no more than 5 pages on their respective positions regarding the construction of the term "object name." Oracle shall file its brief by October 14, 2015 (fourteen days from the date of the hearing), and Thought shall file its brief by October 28, 2015.

**IT IS SO ORDERED**.

Dated: October 7, 2015

WILLIAM H. ORRICK
United States District Judge

14